UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
            *ex rel. LOUIS SCUTELLARO*              Case No. 1:10-cv-01094 (BAH)

            Plaintiff,

v.

CAPITOL SUPPLY, INC.,

            Defendant,

_____/

**DEFENDANT CAPITOL SUPPLY, INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [D.E. 92]**

Pursuant to Fed. R. Civ. P. 12(h)(3) and 56, LCvR 7, and other applicable law, Defendant

Capitol Supply, Inc. ("Capitol") files this Reply in Support of its Motion for Summary Judgment

[D.E. 92], and avers as follows:

The Public Disclosure Bar of the False Claims Act ("FCA") is intended to prevent exactly

what this lawsuit is: a parasitic dispute initiated by an opportunistic plaintiff that is based upon

previously disclosed, public information. The Public Disclosure Bar was amended in 2010.  The

pre-amendment version of the Public Disclosure Bar applies to the alleged sales at issue in this

case which pre-date the 2010 amendment; and the post-amendment version applies to alleged sales

which occurred after the amendment.  Whichever version of the Public Disclosure Bar this Court

deems applicable, summary judgment is mandated. "The public disclosure bar '[s]eek[s] the

golden mean between adequate incentives for whistle-blowing insiders with genuinely **valuable**

**information and discouragement of opportunistic** plaintiffs who have no significant

information to contribute of their own[.]'" *United States ex rel. Shea v. Verizon Communications,*

*Inc.,* CV 09-1050(GK), 2015 WL 7769624, at *4 (D.D.C. 2015) (quoting *U.S. ex rel. Springfield*

*Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 649 (D.C.Cir.1994)) (emphasis in original).  As explained

in Capitol's Motion for Summary Judgment ("Motion") and below, Louis Scutellaro ("Relator" or "Scutellaro") is not an insider in any respect and has no significant information to contribute. Faced with this reality, Relator improperly attempts to narrow the scope of Capitol's Motion in contravention of long established precedent from the Supreme Court. *See, Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 473 (2007) (holding that "3730(e)(4) does **not permi**t *jurisdiction in gross* just because a relator is an original source with respect to **some claim**.") (emphasis added).

Relator's attempt to narrow the scope of Capitol's Motion also mistakenly attempts to narrow the statutory public channels created by the Public Disclosure Bar. *See, U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F.Supp.2d 20, 32 (D.D.C. 2012) (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011) ("[T]he Supreme Court emphasized recently that the specified channels of public disclosure sufficient to trigger the jurisdictional bar should be construed broadly."). With these missteps, and others, Relator does not come close to satisfying his admitted burden of "demonstrat[ing] this Court's jurisdiction by a preponderance of the evidence…." [D.E. 111, p. 10].  Relator's tortured attempts to change what the Public Disclosure Bar is, to what he wishes it should be, only demonstrates that he knows that under the Public Disclosure Bar as it is, Relator's claims fail.

## <u>MEMORANDUM OF LAW</u>

## I.    CAPITOL'S MOTION DOES NOT HAVE LIMITED REACH

Capitol has not limited the scope of its Motion to "claims based on the fraudulent sale of HP products." [D.E. 111, p. 11] (emphasis removed from original). From a factual perspective, Capitol's Motion for Summary Judgment specifically identifies correlations between publically disclosed information from a variety of *fora* and Relator's Amended Complaint. Capitol matched up nearly 100 examples where the shredders identified in Relator's complaints were also found in

the publically disclosed manifest reports. *See,* [D.E. 92, ¶ 20]. In addition to these materials, Relator's own discovery responses established his reliance on his counsel's, Vincent McKnight ("Mr. McKnight"), database of COO information from prior cases. *See,* **Exhibit "6,"** Relator's Supplemental Responses and Objections, at pp. 31-33, [D.E. 92-6].[1] The actual database (which was produced in discovery) reveals over eighty-three thousand (83,000+) products from several manufacturers. *See,* **Exhibit "18,"** Mr. McKnight's COO Chart provided in Relator's October 31, 2014 Supplemental Responses to Capitol's Interrogatories, [D.E. 92-18,], provided to the Court via electronic means. All of this information was further supplemented by Mr. McKnight's Freedom of Information Act ("FOIA") requests, the responses to which expressly identified Capitol. *See,* **Exhibit "6,"** Relator's Supplemental Responses and Objections, pp. 31-33, [D.E. 92-6]; **Composite Exhibit "8,"** Mr. McKnight's FOIA Requests and the General Services Administration ("GSA") Responses [D.E. 92-8].

Relator improperly attempts to bolster his myopic view of Capitol's Motion by arguing that Capitol "has not challenged [some of] the damages presented by Scutellaro…." [D.E. 111, p. 12]. As explained below, Capitol was not required to prove that every sale, line-by-line, violated the Public Disclosure Bar in order to be entitled to summary judgment. Nevertheless, it is the "allegations" in Relator's pleadings that are at issue, not Relator's synopsis of the additional information that he has allegedly learned through discovery or otherwise during the course of this litigation. Although the pertinent inquiry is the allegations in Relator's pleadings, Capitol's Motion addresses Relator's damage summaries and files from Relator's expert to demonstrate that Relator's public information has permeated this entire case. As explained by the Supreme Court (and the express language of the Public Disclosure Bar), the proper measure for analysis of the

---

[1] For purposes of this Reply, Capitol utilizes the same exhibits and exhibit numbers that were used in its Motion for Summary Judgment. [D.E. 92].

Public Disclosure Bar is Relator's "allegations:"

> the term "allegations" is not limited to the allegations of the original complaint. It includes (at a minimum) the allegations in the original complaint *as amended*. The statute speaks not of the allegations in the "original complaint" (or even the allegations in the "complaint"), but of Relator's "allegations" *simpliciter*. Absent some limitation of § 3730(e)(4)'s requirement to Relator's *initial* complaint, we will not infer one. Such a limitation would leave Relator free to plead a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain or from materials in the Government's possession.

*See, Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 473 (2007) (emphasis and parentheticals in original).

Regrettably, Relator stonewalled discovery regarding the sources of information in Mr. McKnight's database. *See,* **Exhibit "19,"** Relator's December 28, 2015 Responses and Objections to Capitol's Third Set of Interrogatories, p. 3, [D.E. 92-19].  Relator objected "on the grounds that the information sought violates both the Attorney-Work Product privilege and the Attorney-Client privilege. … The interrogatory seeks the identity of the clients and circumstances surrounding the receipt of this data from clients of counsel which necessarily runs afoul of these privileges." *Id.* Without waiving these objections, Relator offered a morsel of information by stating "that the aforementioned country of origin data was obtained from clients of counsel." *Id.*

Relator's strategy of disclosing country of origin ("COO") information, and then relying on privileges to protect the sources of such information is a classic example of an improper "sword and shield" argument that has been criticized by numerous courts. Relator cannot have it both ways – using COO data while simultaneously refusing to disclose the sources of that data. The jurisdiction of this Court depends in part on the sources of Mr. McKnight's compilation of COO data. Whether Mr. McKnight obtained information from clients does not inoculate such information for use in future *qui tam* cases. Such a theory – that a mere handoff of information cleanses such information for purposes of the Public Disclosure Bar – would allow Scutellaro in

this case to use what the relator in *Folliard* was not allowed to use (HP data publically disclosed in prior litigation) simply because Mr. McKnight claims to have obtained it from a client (Brady Folliard). *See, U.S. ex rel. Folliard v. Govplace,* 930 F.Supp.2d 123, 129 (D.D.C. 2013). Such a result would defy logic because it would allow one party to troll publically disclosed information, only to handoff such findings to another party so as to avoid the Public Disclosure Bar. To the extent that Relator refused to disclose the sources of the COO data, he cannot meet his burden of proving jurisdiction and his claims should therefore be barred because this Court cannot adequately consider its jurisdiction and/or the viability of Relator's claims under the Public Disclosure Bar.

## II.   RELATOR'S ATTEMPT TO "CLAIM SMUGGLE" HAS BEEN EXPRESSLY REJECTED BY THE SUPREME COURT

Capitol is not required to address every sale identified by Relator to trigger the Public Disclosure Bar.  Like Relator here, relator in *Rockwell* argued that his original source status as to some claims "provided jurisdiction with respect to all of his claims." *Rockwell,* 549 U.S. at 476. The Court rejected that theory, writing that "3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. **We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling.**" *Id.* (emphasis added). Regardless of Relator's efforts to "narrow" or otherwise limit the scope of Capitol's Motion, "[t]he public disclosure bar applies in False Claims Act actions based 'even in part' upon publicly disclosed information." *U.S. ex rel. May v. Purdue Pharma L.P.*, CIV.A. 5:10-1423, 2014 WL 4960944, n.4 (S.D.W. Va. 2014) (quoting *United States ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 920 (4th Cir. 2013); *see also, Staples, Inc.*, 773 F.3d 83 (D.C. Cir. 2014) (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994) ("we stressed that a qui tam action cannot be sustained where both elements of the fraudulent transaction—X and Y—are already public, even if Relator 'comes forward with

additional evidence incriminating the defendant.'"); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351-52 (4th Cir. 2009) ("Section 3730(e)(4)(A)'s public disclosure jurisdictional bar encompasses actions even partly based upon prior public disclosures.").

Capitol did not limit the scope of its Motion. However, in the event the Court concludes Capitol did so, scope is a non-issue because otherwise Relator would be improperly permitted to "claim smuggle" in contravention of the authority hereinabove.

### III.   ALL OF RELATOR'S CLAIMS ARE BARRED REGARDLESS OF WHETHER THE SUBJECT SALES OCCURRED BEFORE OR AFTER MARCH 23, 2010

On March 23, 2010, the Public Disclosure Bar was amended to provide the following:

**(e) CERTAIN ACTIONS BARRED. …**

**(4)(A)** The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed-- **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or **(iii)** from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4) (effective March 23, 2010 through July 21, 2010).

Without citing any supporting authority, Relator argues that Capitol's Motion "can only apply to claims based on the fraudulent sale of HP products occurring before March 23, 2010" – the date the Public Disclosure Bar was amended. [D.E. 111, p. 13] (emphasis removed from original). As explained hereinabove, the scope of Capitol's Motion is not limited in law or fact. Likewise, the March 23, 2010 amendment provides Relator no relief.

First, the amended language allowing the United States to object to a dismissal merely clarifies that the United States can preserve its own claims through a proper objection. Neither the amended Public Disclosure Bar, nor case law, state that the United States' objection benefits a

6

parasitic and opportunistic relator, such as Scutellaro.  Such a result was rejected by the Supreme Court in *Rockwell*, where relator's claims were dismissed, but the United States' claims were not.

Second, the amended version of the Public Disclosure Bar does not operate retroactively to operative facts straddling the amendment date. This factor is relevant because although Relator's initial Complaint was filed after the amendment, it did not identify a single sale at issue after the amendment date – March 23, 2010.  The "allegations" that opened this Court's doors fall under the *prior* version of the Public Disclosure Bar. In *Hughes Aircraft Co. v. United States ex rel. Schumer,* the Supreme Court refused to apply the FCA's 1986 amendments to cases where the underlying conduct occurred prior to the amendment. 520 U.S. 939, 946 (1997) ("The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.") (internal citations omitted).  *Hughes Aircraft Co*. requires that the prior version of the Public Disclosure Bar be applied to this litigation. Even if the Court decides that the amended version of the Public Disclosure Bar is applicable to post-March 23, 2010 sales, there is no indication in case law or the statute itself that the United States' ability to object under the amended version somehow rescues Relator's claims, especially those arising before the amendment. *See also, United States ex rel. Shea v. Verizon Communications, Inc.*, CV 09-1050(GK), 2015 WL 7769624, at *5 (D.D.C. 2015) ("the pre-amendment version of § 3730(e)(4)'s public disclosure bar applies to claims arising from Defendants' conduct before March 23, 2010, and the amended version of the public disclosure bar applies to conduct based on post-March 23, 2010 conduct.").

## IV.   THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION; THE PUBLIC DISCLOSURE BAR APPLIES TO PRE-MARCH 23, 2010 SALES

### A.  The information underlying Relator's claims was publicly disclosed

Relator does not dispute that the information he obtained through the GSA Advantage

website or FOIA requests was publicly disclosed information to which the Public Disclosure Bar applies. In contradictory fashion, he nevertheless argues that "[t]he information underlying Scutellaro's claims was not publically disclosed" while taking aim at the information he obtained from ManifestJournals.com. [D.E. 111, p. 16] (emphasis removed from original). Relator attempts to distinguish analogous binding precedent holding that manifest information identical to that used in this case was a public disclosure by citing non-binding authority that does not specifically address the issue. [D.E. 111, pp. 16-18]; *U.S. ex rel. Doe v. Staples, Inc.*, 932 F.Supp.2d 34, 40 (D.D.C. 2013) aff'd, 773 F.3d 83 (D.C. Cir. 2014) (holding that manifest records containing country of origin information that was sold to subscribers by a competitor of Manifestjournals.com "was publicly disclosed in both the 'news media' and 'administrative report[s]' within the meaning of § 3730(e)(4)(A).").

In *Staples, Inc.*, this Court dismissed a relator's claim for lack of subject matter jurisdiction under the Public Disclosure Bar. The Court's dismissal in *Staples, Inc.* was based in part, on Relator's use of publicly available manifest records. This Court explained,

> [t]he "essential elements" underlying Relator's fraud allegation in this case are both based on publicly disclosed information. In particular, Relator bases the allegedly misrepresented country of origin on shipping data obtained from reports published by PIERS Global Intelligence Solutions ("PIERS"), a company which "**compiles manifest information submitted to Customs by all shippers.**" … And, most importantly, the PIERS reports are readily accessible to the public on the PIERS website. ... While not a traditional news source, this site qualifies as "news media" in light of the ample precedent in favor of broad construction of the channels of public disclosure listed in § 3730(e)(4)(A). Indeed, other courts have found similar trade publications to be "news media." ... The shipping information underlying the PIERS trade reports is also available to public subscribers through the U.S. Customs and Border Protection Automated Manifest System. 19 CFR §§ 4.7, 103.31(a) (requiring Customs to provide vessel manifest information to the press). **The allegedly misrepresented country of origin, here, therefore, was publicly disclosed in both the "news media" and "administrative report[s]" within the meaning of § 3730(e)(4)(A)**.

*Staples, Inc.*, 932 F.Supp.2d at 40 (emphasis added) *aff'd*, 773 F.3d 83 (D.C. Cir. 2014).

The company providing the manifest records in *Staples, Inc.,* (PIERS Global Intelligence Solutions ("PIERS")) is, and was, a direct competitor of ManifestJournals. **Composite Exhibit "4,"** Rossa's Deposition at p. 19:3-12, [D.E. 92-4].   As noted above, PIERS is a news media organization and its reports are administrative reports for purposes of the FCA. Like PIERS, ManifestJournals.com published "trade publications" of the records it received from U.S. Customs under 19 CFR 103.31, it is a news media organization, and its reports containing information derived from U.S. Customs are administrative reports. **Composite Exhibit "4,"** at pp. 8:21-9:1; 12:23-14:17; 19:13-15, [D.E. 92-4]. Thus, in *Staples, Inc.,* manifest records similar to those utilized by Relator were "publicly disclosed in both the 'news media' and 'administrative report[s]' within the meaning of § 3730(e)(4)(A)." *Staples, Inc.*, 932 F.Supp.2d at 40.

Relator argues that he had to pay for the manifest records, so they were not "easily-accessible," and therefore do not qualify as a public disclosure. [D.E. 111, p. 17].   Not only was the payment for information a non-factor in *Staples, Inc.,* the fact that Relator (or any other member of the public) has to subscribe to or otherwise pay for publicly available manifest records is inconsequential.   If payment were the dispositive factor, FOIA requests would not qualify as public disclosures whenever payment is required – but such a result is not supported by applicable case law. *See, Schindler Elevator Corp. v. U.S. ex rel. Kirk,* 563 U.S. 401 (2011) (holding that responses to FOIA requests by Department of Labor were "reports" subject to FCA's Public Disclosure Bar). The manifest records are so easily-accessible that unlike the raw manifest records from U.S. Customs, Relator was able to search on the internet for specific words or phrases such as "Fellowes." **Composite Exhibit "4,"** at pp. 11:13-12:11, [D.E. 92-4]. Relator's assertion that the manifest records often do "not identify the exact product by model number, which is necessary to match a particular product to a sale by Capitol" is surprising, because Capitol did just that and

matched close to a hundred instances of such products in its Motion. [D.E. 111, p. 18]; *see also,* [D.E. 92, ¶ 20]. Under this Court's precedent, the manifest records utilized by Relator were publicly disclosed in both the "news media" and "administrative report[s]" within the meaning of § 3730(e)(4)(A). *See, Staples, Inc.,* 932 F.Supp.2d at 40.

### B. Relator's information was not "innocuous"

Ironically, Relator labels the public disclosures that he utilized to bring his case against Capitol as "innocuous" and "run-of-the-mill information," yet Relator used this "innocuous," "run-of-the-mill" **public information** as the only foundation for this action. [D.E. 111, pp. 18, 23]. Such descriptions undercut Relator's self-proclaimed knowledge and experience that allegedly allowed him to "bridge the gap between facts and fraud…." [D.E. 111, p. 28]. Despite Relator's conflicting positions, Relator hypothesizes that the public information he utilized is "innocuous" because the manifest records often do "not identify exact product numbers" and/or because "the sales data produced by the GSA in response to FOIA requests is merely transactional information about Capitol's sales; it does not contain any information about any products' country-of-origin." [D.E. 111, p. 18]. The public information utilized by Relator is not "innocuous": the manifest records <u>do</u> contain product numbers such as those Capitol matched to Relator's complaints, and the sales data produced by the GSA identified numerous Capitol sales. [D.E. 92, ¶ 20]; **Exhibit "6,"** Relator's Supplemental Responses and Objections, pp. 31-33, [D.E. 92-6].  Moreover, it was significant enough in 2010 for Relator to base his initial Complaint on the public information available from the Manifest Journals; indeed, *the manifest is a 554-page exhibit to the Amended Complaint*.

Faced with the Public Disclosure Bar and Relator's acquiescence as to the public nature of the information used to bring the Complaint, Relator argues that the public information he utilized is "innocuous" because the allegations and transactions were not contained within a single source.

There no such requirement under the Public Disclosure Bar or resulting case law, and the argument contradicts this Court's decision in *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645 (D.C. Cir. 1994), which went to great lengths to distinguish the difference between "allegations" and "transactions." As explained in greater detail below, "[f]raud requires recognition of two elements: a misrepresented state of facts *and* a true state of facts." *Id.* at 655. Accordingly, the "X" element is the misrepresented state of facts and the "Y" element is the true state of facts. Together the "X" and the "Y" elements form the "allegation of fraud" or the "Z" element. *Id.* at 654. Accordingly, all three (3) elements are not required to trigger the Public Disclosure Bar: if the "X" element and "Y" element are disclosed in a public channel, or the "Z" element is disclosed in a public channel, the Public Disclosure Bar is triggered. *Id.* at 654-55. Relator's "innocuous" argument muddles the distinction between the three elements such that public information only matters if it contains an allegation of fraud *i.e.* the "Z" element.

While downplaying his use of public information, Relator accurately concludes that "[t]he question is whether the Government actually knows of, or has discovered, the misrepresentation." [D.E. 111, p. 18] (citing *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 656 (D.C. Cir. 1994)). Although Capitol disputes knowingly misrepresenting the country of origin, the United States had notice of the *alleged* misrepresentations of country of origin based on the numerous notices GSA employee Michele Williams sent to Capitol.  At least five of those notices, cited by Relator, expressly addressed Fellowes shredders. *See,* Relator's Motion for Summary Judgment, Exhibits 17 and 17a [D.E. 96-21]; Exhibits 18 and 18a [D.E. 96-22]; Exhibits 24, 24a, and 24b [D.E. 96-30]; [D.E. 96-31]; Exhibits 25 and 25a [D.E. 96-33]; [D.E. 96-34]; and Exhibits 27, 27a, and 27b (Fellowes) [D.E. 96-37]; [D.E. 96-38]. Thus, it is obvious that the United States had discovered or otherwise knew of the *alleged* misrepresentations without Relator's input.

**C.  Discovery materials from prior cases also trigger the Public Disclosure Bar**

Capitol has demonstrated how the same COO information has traveled from the *Liotine* case, to the *Folliard* case, to this case. [D.E. 92, ¶¶ 26-40]. Capitol's Motion goes further to show where the same information has appeared in Relator's expert's files. [D.E. 92, ¶ 38]. Relator ignores the screen shots and tables contained within Capitol's Motion and blindly writes that "there are no 'copy-cat' concerns here." [D.E. 111, p. 19]. Capitol's screen shots and tables prove that such a statement is incorrect. [D.E. 92, ¶¶ 26-40]. Furthermore, Relator's argument that only four products were at issue in *Folliard* is a red-herring because it is not the products that are at issue. The issue is the voluminous amount of COO information utilized by Folliard's expert that has been transferred from case to case. This information spanned over a decade (2000-2010) and consisted of over 700 spreadsheets. *See,* **Exhibit "9,"** Dr. Albright Affidavit, at ¶¶ 2-7, [D.E. 92-9]; **Exhibit "10,"** Report of Dr. Albright in the *Liotine* matter, pp. 3-4, [D.E. 92-10]; [D.E. 92, ¶¶ 27-29].

Relator's argument that "there is no evidence that the original HP country-of-origin charts were made part of the record in *Liotine* or *Folliard*" also misses the mark because the expert report in *Folliard* is publicly available on this Court's PACER website. *See, U.S. ex rel. Brady Folliard v. Government Acquisitions and GovPlace*, Case No.: 1:07-cv-00719-RCL, Folliard's Memorandum in Opposition to Motion for Summary Judgment, [D.E. 158-8]. More importantly, the expert in *Folliard* and *Liotine* was retained by Mr. McKnight. For this reason, the decision in *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) regarding the filing of discovery materials is not dispositive. In *Springfield*, this Court noted that,

> [u]ntil discovery materials are filed with the court, **we doubt** that the discovery process conducted between two private litigants could itself constitute a public disclosure within the meaning of § 3730(e)(4)(A). *Cf.* *653 **355 Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984) ("[Discovery] proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice."). … **If discovery materials are not filed with**

**the court, they are only potentially in the public eye.** If they are not yet in the public eye, no rational purpose is served—and no "parasitism" deterred—by preventing a *qui tam* plaintiff from bringing suit based on their contents.

*Springfield*, 14 F.3d at 652-53 (emphasis added).

*Springfield* did not address the circumstances in this case, where Mr. McKnight has gamely shuffled COO information from case-to-case for over a decade. Neither Relator nor Mr. McKnight can dispute such actions; instead, in non-committal fashion, they write that "information obtained by Mr. McKnight in other cases **is not necessarily** publically disclosed. **In most** (if not all) cases, no source materials (*i.e.* COO tables or sales data) were filed with the court." [D.E. 111, p. 20, n. 12] (emphasis added). Coupled with the fact that Relator stonewalled discovery regarding his sources of information, his equivocal statement fall short of satisfying his burden of establishing that the information he utilized was not publically disclosed, or that this Court has subject-matter jurisdiction over his claims. *See,* [D.E. 111, p. 10] ("Scutellaro must demonstrate this Court's jurisdiction by a preponderance of the evidence…."). The Public Disclosure Bar has clearly been triggered, in part, by Relator's use of discovery materials from other cases.

## V.   "ALLEGATIONS" AND "TRANSACTIONS" WERE PUBLICLY DISCLOSED

### A.  *Crennen* exposed more than just rumors of misdeeds

Relator has once again confused the distinction between the "X" element (the misrepresented state of facts), the "Y" element (the true state of facts), and the "Z" element (the allegation of fraud).  *Springfield, supra*. The *Crennen* case does not satisfy the "X" element or the "Y" element ("allegations or transactions" respectively), instead it satisfies the "Z" element (the allegation of fraud) because the *same* allegations – that Capitol allegedly fraudulently misrepresented the COO of products – regarding the *same* GSA contract and brands of products in *Crennen* now appear in this case. **Exhibit "20,"** p. 19, [D.E. 92-20]; **Exhibit "16,"** documents produced by Relator's Expert at lines 210, 630, 1546, and 6675, provided to the Court via

electronic means; and Declaration of Christopher Crennen, attached as **Exhibit "21,"** p. 11, [D.E. 92-21]. *Crennen* satisfies the "Z" element and therefore triggered the Public Disclosure Bar.

### B. The publicly disclosed information utilized by Relator is not "run-of-the-mill" information

As explained above, the information utilized by Relator is not "innocuous" or "run-of-the-mill." [D.E. 111, pp. 18, 23]. Likewise, Capitol has not "scrap[ed] together bits and pieces of relevant-but-innocuous information found in the public sphere." [D.E. 111, p. 23]. The public information Relator claims is "innocuous" and "run-of-the-mill" was not as benign as Relator argues because GSA employee Michelle Williams sent notices to Capitol regarding the veracity of its COO certifications for some of the same products (or brands of products) at issue in this case. Relator's argument that "Capitol takes an improperly broad view of what constitutes 'public' information" [D.E. 111, p. 23] ignores that "the Supreme Court emphasized recently that the specified channels of public disclosure sufficient to trigger the jurisdictional bar **should be construed broadly.**" *U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F.Supp.2d 20, 32 (D.D.C. 2012) (emphasis added) (citing *Schindler Elevator Corp. v. United States ex rel. Kirk,* 563 U.S. 401, 407 (2011)). Although Capitol has not construed public channels in a broad fashion, if it did, a broad construction is mandated by the Supreme Court.

Relator makes a similar mistake in his reliance on the *Springfield* decision, this time for the proposition that the publicly disclosed information he utilized was "relevant-but-innocuous…." [D.E. 111, p. 23]. In *Springfield,* an employer brought a *qui tam* action under the FCA against an arbitrator with whom it had been involved in earlier litigation, alleging that the arbitrator fraudulently billed the Government. 14 F.3d at 647-48. As the Court explained,

> Springfield contended that its suspicions first arose upon inspection of the [arbitrator's] pay vouchers, which were produced by civil discovery processes in [separate] litigation. Based upon its own involvement in the arbitration, Springfield recognized

that [the arbitrator] had no arbitral function to perform on several of the days for which he sought pay. According to Springfield, it then conducted further investigation on its own, calling several of the numbers listed on Quinn's telephone records that had been disclosed during discovery.

*Id.* at 648.

In holding that the pay vouchers (and other telephone records) were innocuous, this Court noted that "Springfield started with innocuous public information; **it completed the equation with information independent of any preexisting public disclosure.**" *Springfield*, 14 F.3d at 657 (emphasis added).   Armed with public information alone, the Government would not have discovered the alleged fraud; it was Springfield's knowledge and experience that supplied the missing piece. Unlike in *Springfield,* there is no missing piece in this litigation because if one compares the manifest records, HP COO data, or Mr. McKnight's database against the GSA Advantage website, or Capitol's sales records produced by the Government in response to FOIA requests, no special knowledge or experience is required to uncover information that is at issue.

### C.  The United States' intervention as to Fellowes' shredders does not absolve Relator of his mistakes

Without citing a single case or statutory provision, Relator opines that "the Government's intervention negates any 'transactions' involving Fellowes *printers*."[2] [D.E. 111, p. 24] (emphasis added). Such an argument is incorrect because if Relator's claims that were dismissed due to the United States' intervention are found to be based upon public information, he may still be entitled to recover a portion of the proceeds and his attorneys' fees and costs relating to transactions involving Fellowes shredders, if he qualifies as an original source. *See,* 31 U.S.C. § 3730(d) ("Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to

---

[2] The United States has intervened as to Fellowes paper shredders, not printers.

allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation."); *U.S. ex rel. Feldman v. City of New York*, 808 F.Supp.2d 641, 649 (S.D.N.Y. 2011) ("The Court notes, however, that this dismissal in no way diminishes Feldman's continuing statutory rights delineated in § 3730 of the FCA, including, most notably, his entitlement to 15–25% of any monetary award recovered by the Government in this action. *See* 31 U.S.C. § 3730(d)."); *U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000), *as amended* (Apr. 21, 2000) ("For all these reasons, we conclude that a relator whose claim is subject to dismissal under section 3730(e)(4) may not receive any share of the proceeds attributable to that claim.").

Aside from conflicting with § 3730(d) and applicable case law, if Relator's argument were accepted it would lead to the irrational result of the Public Disclosure Bar being completely circumvented every time the Government intervenes. The United States' intervention here clearly does not negate any "transactions" involving Fellowes shredders.

## VI.   RELATOR'S CLAIM IS "BASED UPON" PUBLICLY DISCLOSED INFORMATION; IT IS RELATOR'S ANALYSIS THAT LACKS PRECISION

This Court has "explained that a suit is 'based upon' publicly disclosed 'allegations or transactions' when the allegations in the complaint are 'substantially similar' to those in the public domain." *U.S. ex rel. Davis v. D.C.*, 679 F.3d 832, 836 (D.C. Cir. 2012). The Court further explained that "[t]his rule prevents suits by those other than an 'original source' when the government already has enough information 'to investigate the case and to make a decision whether to prosecute' or where the information 'could at least have alerted law-enforcement

authorities to the likelihood of wrongdoing.'" *Id.* (quoting *Springfield,* 14 F.3d at 654). The Government not only had enough information to investigate in this case, it did so, which culminated in the GSA sending numerous notices to Capitol. The Government also investigated the COO of products offered by Capitol in *Crennen.*

Although Capitol's analysis is line-by-line, file-by-file, and product-by-product, Relator argues that Capitol has improperly used "a high level of generality …." [D.E. 111, p. 25]. Capitol's detailed analysis proves that the allegations and transactions described in Relator's pleadings are "substantially similar to those in the public domain…." *U.S. ex rel. Settlemire v. D.C.*, 198 F.3d 913, 918 (D.C. Cir. 1999). It is Relator's analysis that lacks precision because it fails to specifically address Capitol's detailed analysis in any substantial way.

All of Relator's authorities address unique factual scenarios that do not exist in this case. For example, Relator cites *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir. 1994) and *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 1:11-CV-962-WSD, 2013 WL 2303768 (N.D. Ga. 2013) for the proposition that a public disclosure must identify a particular defendant to trigger the Public Disclosure Bar. [D.E. 111, p. 26]. Relator then makes an illogical leap and writes that "Capitol was neither a defendant nor even mentioned in *Liotine* or *Folliard*." *Id.* Such an argument entirely misses the point: the issue is whether Capitol was named in a public disclosure, not whether it was a named defendant or otherwise expressly mentioned in the pleadings of those actions. Furthermore, none of the cases cited by Relator stand for the proposition that every public disclosure must expressly identify a particular defendant. Regardless, Capitol <u>was</u> expressly named in the public disclosures. *See,* [D.E. 92, ¶¶ 22-24]; **Exhibit "6,"** Relator's Supplemental Responses and Objections, pp. 31-33, [D.E. 92-6] ("Relator's Counsel obtained sales data from the GSA through a series of FOIA Requests that provided details of sales associated with Federal Supply

Service Vendors, including Capitol Supply"); *see also,* Relator's screen shots of from the GSA Advantage Website, [D.E. 27-4]; [D.E. 27-5]; [D.E. 27-6]; [D.E. 27-7]; [D.E. 27-8]; [D.E. 27-9]; and [D.E. 27-10]. **Not only was Capitol expressly named in public disclosures, the responses to Mr. McKnight's FOIA requests in *Folliard* expressly contained Capitol's sales data.** *See,* **Exhibit "6,"** pp. 31-33, [D.E. 92-6]. The other public disclosures – the manifest records, discovery materials from other cases, and Mr. McKnight's COO database – all specifically identified the COO for numerous products at issue in this litigation.

Relator's reliance on *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.,* 906 F. Supp. 2d 1264 (N.D. Ga. 2012) is also misplaced. [D.E. 111, p. 26]. In *Saldivar,* the court held that relator's claims were not "based upon" disclosures in prior complaints where the prior actions involved the defendant-entity's predecessor and different theories of liability. *Id.* at 1274. Despite Relator's attempt to draw a comparison between the circumstances in *Saldivar* and *Crennen,* those cases are inapposite. In *Crennen,* Capitol was specifically named, the same theory of liability was alleged, the same contract was at issue, and the subject products were from some of the same manufacturers at issue in this case. *See,* [D.E. 92, ¶¶ 46-54]; *Crennen v. Dell Marketing, L.P.*, 711 F.Supp.2d 157 (D. Mass. 2010). Notably, Relator alleges that the information in *Crennen* is "stale" because the case was "based on data available in March of 2006." [D.E. 111, p. 27]. *Crennen* can hardly be stale when a large amount of the transactions at issue <u>in the instant case</u> pre-date 2006. *See generally,* [D.E. 27, ¶ 7]. Given the foregoing set of facts, Relator's claim is clearly "based upon" publicly disclosed information.

## VII.   RELATOR DOES NOT QUALIFY AS AN ORIGINAL SOURCE

The current version of the FCA defines an "original source" as,

an individual who either (i) **prior to a public disclosure** under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or

transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government **before filing an action** under this section.

31 U.S.C. § 3730 (e)(4)(B) (post March 23, 2010) (emphasis added).

The prior version of the FCA defines an "original source" as

an individual who has direct **and** independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government **before filing an action** under this section which is based on the information.

31 U.S.C. § 3730 (e)(4)(B) (prior to March 23, 2010) (emphasis added).

Relator does not qualify as an "original source" under either definition. Under the current version of the original source definition, Relator has failed to identify any record evidence regarding the timing of the numerous public disclosures at issue. Likewise, Relator has failed to identify any record evidence demonstrating that he disclosed his information to the Government "prior to a public disclosure…." 31 U.S.C. § 3730 (e)(4)(B) (post March 23, 2010). Similarly, under *either* version of the original source definition, Relator has failed to put forth any evidence that he provided his information to the Government "before filing [his] action…" on June 29, 2010. *Id.*; 31 U.S.C. § 3730 (e)(4)(B) (prior to March 23, 2010). To avoid being disqualified as an "original source," Relator makes the following argument:

[t]o be an original source, Relator must have advised the Government of the underlying fraud **before the filing of the operative complaint, which in this instance is the Amended Complaint.** Here, Scutellaro and his counsel were involved in repeated communications with the DOJ before February 28, 2013 about the basis of the allegations and transactions of fraud, and therefore this prong is satisfied. *See* Exhibit 9 (Decl. of H. Vincent McKnight) at ¶¶ 2 - 4.

[D.E. 111, p. 27, n.15].

Relator's argument as to his qualification as an "original source" was likely affected by Relator's misreading of the Supreme Court's statement in *Rockwell* that "when a plaintiff files a

complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." 549 U.S. at 473-74; *see also,* [D.E. 111, p 10] (quoting *Rockwell*). Upon closer examination however, the Supreme Court's statement in *Rockwell* addressed the "allegations" to be considered, not the "information" underlying the allegations. *Rockwell,* 549 U.S. at 473-74. To state the obvious, evidence that Relator voluntarily provided his information to the Government before filing his **Amended** Complaint is not evidence that he voluntarily provided such information to the Government nearly three (3) years earlier "before filing [his] action…" *i.e.* his initial Complaint; indeed, it is a tacit admission that Relator did no such thing. [D.E. 1]; 31 U.S.C. § 3730 (e)(4)(B) (pre March 23, 2010); 31 U.S.C. § 3730 (e)(4)(B) (post March 23, 2010). It should not be overlooked that it is Relator's burden to produce such evidence, and Relator has admitted to the burden being Relator's responsibility in his Response. *See,* [D.E. 111, p. 10] ("Scutellaro must demonstrate this Court's jurisdiction by a preponderance of the evidence…."). These fatal deficiencies aside, Relator does not satisfy the remaining prongs of either version of the original source definition because Relator does not have information that is independent of the public disclosures he relies upon.

In *Rockwell,* the Supreme Court addressed the prior version of the original source exception to the Public Disclosure Bar.  549 U.S. 457 (2007). The Court held that the Public Disclosure Bar presented a question of subject matter jurisdiction and that whether the government intervened in the litigation was irrelevant to whether Relator had a right to remain in the case. *Id.* at 476. The Government's intervention **<u>does not</u>** provide an "independent basis of jurisdiction." *Id.* Ultimately, the Court reversed the Tenth Circuit's holding that Relator was an original source of the subject information and confirmed that the correct interpretation of the provision was whether Relator had direct <u>and</u> independent knowledge of the information upon which Relator's allegations are based.

20

*Id.* at 476.  As the Court explained, "[s]urely the information one would expect a relator to 'provide to the Government **before filing an action** ... based on the information' is the information underlying Relator's claims." *Id.* at 471 (emphasis added). The Supreme Court explained that,

> the term "allegations" is not limited to the allegations of the original complaint. It includes (at a minimum) the allegations in the original complaint *as amended*. The statute speaks not of the allegations in the "original complaint" (or even the allegations in the "complaint"), but of Relator's "allegations" *simpliciter*. Absent some limitation of § 3730(e)(4)'s requirement to Relator's *initial* complaint, we will not infer one. Such a limitation would leave Relator free to plead a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain or from materials in the Government's possession.

*Rockwell*, 549 U.S. at 473 (emphasis and parentheticals in original).

Accordingly, as the defendant in *Rockwell* argued, Relator must "satisfy the original-source exception **through all stages of the litigation**" not just at the time of one complaint or another. *Id.* at 473 (emphasis added). This distinction was especially pertinent in *Rockwell* because although Relator there was arguably an original source under the claims in his initial complaint, he changed his theory, and was not an original source for at least one of the claims alleged in his amended complaint. *Id.* at 457; 463-65.

Relator's allegations disqualify him as an "original source" because unlike the allegations in his other *qui tam* cases, he only alleged having "direct" knowledge of the alleged TAA violations at issue in this litigation, as opposed to the allegations in his other cases of having direct *and* independent knowledge of TAA violations. [D.E. 27, ¶ 5]; *see also,* **Exhibit "2,"** *Mer-Wil* Complaint, ¶ 5, [D.E. 92-2].  Although Relator argues that his blatant pleading deficiencies are mere "technicalities" he clearly observed such "technicalities" when he alleged that he had the requisite independent knowledge when filing his other *qui tam* cases. [D.E. 111, p. 29]; *see also,* **Exhibit "2,"** *Mer-Wil* Complaint, ¶ 5, [D.E. 92-2].   Moreover, these are fundamental statutory

prerequisites, and not just mere word choice.  The absence of this required factual allegation clearly demonstrates that Relator's information is not independent of the publically disclosed information he accumulated (or that his attorney accumulated during years of *qui tam* litigation in other cases). The fact that Relator allegedly undertook "his own independent investigation" does not render his information "independent" for purposes of the original source exception. [D.E. 111, p. 29]. As this Court explained in *Springfield*, "'[i]ndependent knowledge' is knowledge that is not itself dependent on public disclosure." 14 F.3d at 656. Whether it was Relator's use of the GSA Advantage Website, ManifestJournals.com, FOIA requests, or his counsel's extensive database of COO information, Relator's information is heavily dependent on public disclosures. The fact that Mr. McKnight attempted to purge this reality by propounding discovery to essentially rediscover what Relator already learned through public channels does not somehow cleanse Relator's misconduct. There is no re-set button to the Public Disclosure Bar or its original source exception.

Relator argues that he qualifies as an original source because he used "his own personal knowledge and experience to transform basic facts in the public domain into a claim of fraud." [D.E. 111, p. 28]. Relator cannot fool this Court: no special knowledge or experience is required to compare manifest records identifying products from China with the GSA Advantage website or records produced by the Government itself in response to FOIA requests. As this Court explained in *Springfield,* to qualify as an original source a relator who starts "with innocuous public information; [must] **complete[ ] the equation with information independent of any preexisting public disclosure.**" 14 F.3d at 657 (emphasis added). There was no "equation" for Relator to complete, because all of the necessary information was in the public sphere and was therefore not innocuous. No special knowledge or experience was required; all that anyone, including the United States, needed to do was compare the manifest records with Capitol's sales records that were

produced in response to FOIA requests or even the GSA Advantage website "then *voilà*, the plaintiff would be entitled to millions of dollars in *qui tam* compensation." *Staples, Inc.,* 773 F.3d at 89 (quoting *Springfield,* 14 F.3d at 649).

The same applies to the voluminous COO records horded by Relator's counsel for over a decade. These materials were not "basic facts" floating around in the public realm, which Relator managed to piece together; rather, the materials were detailed reports and data, some of which explicitly identified Capitol. Based on Relator's own allegations regarding the numerous notices from GSA employee Michele Williams, there was no "gap between facts and [alleged] fraud" for Relator to "bridge[ ]" as he argues. [D.E. 96-1, p. 16]; [D.E. 111, p. 28]. Relator has completely failed to demonstrate that his efforts "materially add[ed] to the publicly disclosed allegations or transactions…" in any fashion. 31 U.S.C. § 3730 (e)(4)(B) (post March 23, 2010).

Relator's argument that "[t]he time for challenging the sufficiency of Scutellaro's pleading has long passed" is equally futile because Capitol made such a challenge in its Answer and Affirmative Defenses, and more importantly because subject-matter jurisdiction can be challenged at any time. [D.E. 44, p. 4]; [D.E. 111, p. 29]; Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also, United States ex rel. Shea v. Verizon Communications, Inc.,* CV 09-1050(GK), 2015 WL 7769624, at *6 (D.D.C. 2015). In *Rockwell,* Relator's original source status was actually challenged *after* a jury trial. 549 U.S. at 457. Clearly, Capitol's Motion and challenge of this Court's subject matter jurisdiction is timely.

## VIII.   RELATOR'S CLAIMS STEMMING FROM POST AMENDMENT SALES SHOULD ALSO BE DISMISSED

On March 23, 2010, the FCA's Public Disclosure Bar was amended as follows:

**(e) CERTAIN ACTIONS BARRED. …**

**(4)(A)** The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed-- **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or **(iii)** from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4) (effective March 23, 2010 through July 21, 2010).

This Court has concluded "that the pre-amendment version of § 3730(e)(4)'s public disclosure bar applies to claims arising from [d]efendants' conduct before March 23, 2010, and the amended version of the public disclosure bar applies to conduct based on post-March 23, 2010 conduct." *United States ex rel. Shea v. Verizon Communications, Inc.*, CV 09-1050(GK), 2015 WL 7769624, at *5 (D.D.C. 2015). As discussed above, the fact that the United States now has the ability to object to a dismissal does not somehow preserve Relator's improper claims; instead, it merely codifies what the Supreme Court held in *Rockwell*: that "[t]he elimination of [Relator] leaves in place an action pursued only by the [Government]…." 549 U.S. at 478. If the United States objection was permitted to save Relator's claims, it would improperly exceed the scope of the United States' limited intervention in this matter.

Aside from this difference, "[u]nder § 3730(e)(4)(A)—both pre- and post-ACA amendment—a claim is barred if the allegations **or** transactions forming the basis of the claim have been previously disclosed in any of the FCA's enumerated sources" *Shea*, 2015 WL 7769624, at *6 (emphasis added). For the reasons explained hereinabove, Relator's claims are barred because the allegations and transactions forming the basis of his claim have previously been disclosed in the FCA's enumerated public sources, and Relator does not qualify as an "original source" under either version of the statute. For these reasons, Capitol is entitled to summary judgment under either version of the Public Disclosure Bar.

24

Respectfully submitted,

PADULA HODKIN, PLLC
Co-Counsel for Capitol Supply, Inc.
101 Plaza Real South, Suite 207
Boca Raton, FL  33432
Phone: 561.544.8900
Fax: 561.544.8999

Date: May 23, 2016

By: /s/ Adam J. Hodkin
      Adam J. Hodkin, FBN 962597
      Email: ahodkin@padulahodkin.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on this 23rd day of May, 2016, on all counsel or parties of record on the Service List below.

/s/ Adam J. Hodkin
Adam Hodkin

## SERVICE LIST

**Darrell C. Valdez, Esquire**
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW, Civil Division
Washington, D.C. 20530
Counsel for United States of America

**H. Vincent McKnight, Jr., Esquire**
Sanford Heisler, LLP
1666 Connecticut Avenue, NW, Suite 300
Washington, DC 20009
Counsel for Louis Scutellaro

**Michael Bhargava, Esquire**
Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, DC 20036
Co-Counsel for Capitol Supply, Inc.

**John R. Thomas, Jr., Esquire**
Gentry Locke
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022
Co-Counsel for Louis Scutellaro