## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the authorized representatives of the United States of America, acting through the United States Department of Justice and on behalf of the United States General Services Administration ("GSA"), and Capitol Supply, Inc. ("Capitol Supply"), hereafter collectively referred to as "the Parties".

## RECITALS

A.   Capitol Supply advertised and sold products to various federal agencies through the GSA Advantage! website and pursuant to Multiple Award Schedule Contract No, GS-02F-0100N ("MAS Contract 0100N"). MAS Contract 0100N incorporated, by reference, provisions of the Federal Acquisition Regulation ("FAR") that requires that all vendors comply with the Trade Agreements Act ("TAA"), 19 U.S.C. §§2501, *et seq.*; 48 C.F.R. 52.225-5.

B.   The United States alleges that Capitol Supply advertised and sold to various Federal agencies under MAS Contract 0100N Chinese-made Fellowes Shredders in violation of the FAR, the TAA, and the False Claims Act ("FCA"). The conduct set forth in this paragraph is referred to below as the "Covered Conduct."

C.   Capitol Supply refutes and does not admit any liability in connection with the allegations of the United States set forth in Paragraph B. This Agreement represents a compromise to avoid continued litigation and associated risks and is neither an admission of liability by Capitol Supply nor a concession by the United States that its claims are not well founded.

D.   On September 20, 2017, Capitol Supply filed a chapter 11 voluntary petition under Chapter 11 of Title 11 of the United States Code, and its bankruptcy case is presently

pending before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

F.  Capitol Supply and the United States are parties to an appeal pending before the United States Court of Appeals for the Eleventh Circuit, Appeal No. 18-13168 (the "Appeal Case").

G.  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims and the Appeal Case, and in consideration of the Parties' mutual promises and obligations in this Settlement Agreement, the Parties agree, and covenant as follows:

## TERMS AND CONDITIONS

1.  Subject to the Bankruptcy Court's confirmation of a plan of reorganization proposed by Capitol Supply, as may be supplemented or amended (the "Plan"), Capitol Supply shall pay to the United States $125,000.00 (one hundred twenty-five thousand dollars) ("Settlement Amount") in monthly payments for a period of three years, at an interest rate of 4% per annum, by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice and the payment terms set forth as follows:

    a.  For the first year starting on the effective date of the Plan, Capitol Supply will make monthly payments in the amount of accrued interest only; and

    b.  All payments made after the first year will be in the amount of interest plus $5,208.33 in principal, with a final payment of $5,208.41, for a total principal of $125,000.

2

2. Capitol Supply will separately classify the amount of the Settlement Amount of the United States in the Plan, and will propose that such class and the Settlement Amount have higher priority than all other general unsecured creditors and debts in the Plan.

3. Capitol Supply will file the Plan that is consistent with the terms of this Agreement and contains the aforementioned payment terms with respect to the Settlement Amount.

4. Capitol Supply will seek the Bankruptcy Court's approval of this Agreement, and the terms of this Agreement are subject to such approval. The Parties further agree that the enforceability of this Agreement is conditioned upon, and subject to, the Bankruptcy Court entering an order approving this Agreement that becomes final and non-appealable (the "Settlement Order"), and the Bankruptcy Court entering an order confirming the Plan that becomes final and non-appealable (the "Confirmation Order").

5. As soon as reasonably practicable following the entry of the Settlement Order and Confirmation Order, Capitol Supply shall file the appropriate pleading in the Appeal Case to dismiss its appeal.

6. Capitol Supply will be allowed, with satisfactory performance as required by contract, to maintain its current contracts with the GSA and other government agencies, to make offers and hold new contracts, but agrees to refrain from holding or bidding for any Schedule 75 supply contracts (for office supplies) with the GSA for a period of 5 (five) years from the date of this Agreement.

7. Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Capitol Supply's full compliance with the payment of the Settlement Amount

and the conditions of this Settlement Agreement, the United States fully and finally releases Capitol Supply and assigns from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Anti-Kickback Act, 41 U.S.C. §§ 8701-8707, the Truth in Negotiations Act, 10 U.S.C. § 2306a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or any other statute creating causes of action for civil damages or civil penalties that the Civil Division of the U.S. Attorney's Office for the District of Columbia has actual and present authority to assert or compromise pursuant to 28 C.F.R. Part O, Subpart I, § 0.45(d) (2008); or the common law theories of breach of contract, payment by mistake, unjust enrichment, misrepresentation, and fraud, including fraud in the inducement and promissory fraud.

8. In the event that Capitol Supply fails to pay any amount as provided in Paragraph 1 within 10 days of the date upon which such payment is due, Capitol Supply shall be in default of its payment obligations. The United States will provide notice of the default, by certified mailing to undersigned counsel for Capitol Supply. Capitol Supply shall have an opportunity to cure such default within 10 business days from the date of delivery or attempted delivery of the notice. If Capitol Supply fails to cure the default within the time allotted, the remaining unpaid balance of the entire Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 4% per annum compounded daily from the date of default on the remaining unpaid total principal and interest balance. The United States, at its sole option, may (a) offset the remaining unpaid balance from any amounts due and owing to Capitol Supply by any department, agency, or agent of the United States (including but not limited to the General

4

Services Administration) at the time of the default; or (b) exercise any other rights granted by law or in equity, including the option of referring such matters for private collection. Capitol Supply agrees not to contest any offset imposed and not to contest any collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court. Capitol Supply shall pay the United States all reasonable costs of collection and enforcement under this paragraph, including attorney's fees and expenses. Capitol Supply also acknowledges and understands that should any amounts become due and owing as a result of a default, the provisions of the Federal Priority Statute, 31 U.S.C. § 3713, will apply to such amounts, and that the United States reserves all rights to pursue Capitol Supply and or any representative thereof for violations of the same.

9. Notwithstanding the releases given in Paragraphs 7 and 11 of this Agreement, or any other term of this Agreement, the following claims of the United States and defenses of Capitol Supply with respect to such claims, are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Any administrative liability, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g. Any liability for failure to deliver goods or services that is not part of the Covered Conduct; and

5

      h.     Any liability of individuals.

10.    Upon the entry of the Settlement Order and Confirmation Order, Capitol Supply waives and will not assert any defenses that this Agreement constitutes or creates a defense to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that such prosecution or action is barred by the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or the Excessive Fines Clause in the Eighth Amendment of the Constitution. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11.    Upon the entry of the Settlement Order and Confirmation Order, Capitol Supply fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Capitol Supply has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.    Unallowable Costs:

    a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Capitol Supply and its present or former officers, directors, employees, shareholders, and agents in connection with:

        i. Matters covered by this Agreement;

        ii. United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

6

      iii. Capitol Supply's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

      iv. Negotiation and performance of this Agreement;

      v. Payment(s) Capitol Supply makes to the United States pursuant to this Agreement, including costs and attorneys' fees, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

   b. Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Capitol Supply, and Capitol Supply shall not charge such Unallowable Costs directly or indirectly to any contract with the United States or its agencies.

13. Capitol Supply has provided to the Bankruptcy Court schedules that represented the financial condition of the company at the start of the bankruptcy. Capitol Supply provided these under penalty of perjury to the Bankruptcy Court and reaffirms here that the schedules provided to the Bankruptcy Court, and through counsel provided to the government, were materially complete and accurate, to the best of its knowledge. Capitol Supply knows and understands that the United States relied upon the accuracy and completeness of these schedules in reaching this Agreement.

14. Within 18 months after bankruptcy Court approval of this Agreement, if the United States learns of asset(s) in which Capitol Supply had an interest in at the time of the Bankruptcy filing which was not disclosed in the Financial Statement, or, within the same time period, learns of a material misrepresentation by Capitol Supply on, or in connection with the Financial Statement, the United States may petition the Bankruptcy Court to rescind this

Agreement and reinstitute this suit based on the Covered Conduct and/or upon the allegations set forth by the Relator in this action.

15. In the event that the United States, pursuant to Paragraph 14 above, requests the bankruptcy court to rescind this Agreement, and the bankruptcy court permits this agreement to be rescinded, then Capitol Supply agrees not to plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which (a) are filed by the United States within 180 calendar days of written notification to defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct and the allegations previously set forth by Relator in this action, except to the extent these defenses were available on the effective date of this Agreement.

16. This Agreement is intended to be for the benefit of the Parties only, and constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The jurisdiction and venue for any dispute relating to this Agreement is the Bankruptcy Court and the United States District Court for the District of Columbia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

Case 1:10-cv-01094-BAH   Document 215-1   Filed 11/26/19   Page 9 of 10

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Capitol Supply's successors, transferees, heirs, and assigns.

23. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24. Subject to the entry of the Settlement Order and Confirmation Order, this Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

JESSIE K. LIU, DC Bar # 472845
United States Attorney

DANIEL F. VANHORN, DC Bar 924092
Chief, Civil Division

DARRELL C. VALDEZ, DC Bar 420232       12/11/2018
Assistant United States Attorney        Date
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C. 20530
(202) 307-2843

Counsel for the United States

9

_____  
BRADLEY S. SHRAIBERG  
Shraiberg, Landau, & Page P.A.  
2385 N.W. Executive Center Dr.  
Suite 300  
Boca Raton, FL 33431

Counsel for Capitol Supply, Inc.

_12/11/2018_  
Date

_____  
ROBERT STEINMAN  
CEO, Capitol Supply, Inc.

_12/11/2018_  
Date

10